Christine BEAUMONT, Loretta Thompson, Stacy Thompson, Barbara Holt, President of North Carolina Right to Life, Inc., and North Carolina Right To Life, Inc., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION, Defendant.

No. 2:00–CV–2–BO–2.

United States District Court, E.D. North Carolina, Western Division.

Oct. 3, 2000.

James Bopp, Jr., James R. Mason, III, Terre Haute, IN, Paul Stam, Jr., Stam, Fordham & Danchi, Apex, NC, for Plaintiff.

## ORDER

TERRENCE WILLIAM BOYLE, Chief Judge.

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment

and Defendant's Motion for Partial Dismissal and for Partial Summary Judgment. In the underlying action, Plaintiffs challenge 2 U.S.C. § 441b(a) (banning corporate contributions and expenditures in connection with federal elections), 11 C.F.R. § 114.2(b) (prohibiting all corporate contributions to federal candidates and all expenditures made by non-"qualifying" corporations), and 11 C.F.R. § 114.10 (making a narrow exception to the ban on corporate expenditures for certain "qualified" non-profit corporations).

Plaintiffs seek both declaratory and injunctive relief with respect to the challenged provisions and have moved for Summary Judgment. Defendant, Federal Election Commission (the "Commission" or "FEC"), has moved for Partial Summary Judgment and Partial Dismissal in response to Plaintiffs' Motions. For the reasons discussed below, the challenged provisions violate NCRL's First Amendment rights without a compelling interest. Plaintiffs' Motion for Summary Judgment will be granted and Defendant's Motion for Partial Summary Judgment and Partial Dismissal will be denied. The extent of the declaratory relief to be given has yet to be determined by the Court. The effect of this ruling is stayed until the Parties submit Memoranda on this issue as directed in the Conclusion to this Order.

## BACKGROUND

Plaintiff North Carolina Right to Life, Inc. ("NCRL") is a non-profit corporation, exempt from federal taxation under § 501(c)(4) of the Internal Revenue Code. NCRL engages in various charitable practices, which include providing crisis pregnancy counseling, publishing crisis pregnancy literature and promoting alternatives to abortion. Verified Complaint at ¶ 13. NCRL has no shareholders, nor does any part of its net earnings inure to the benefit of any individual. Verified Complaint at ¶¶ 11, 14. Plaintiff Chris-

tine Beaumont is an eligible voter in North Carolina, Plaintiff Loretta Thompson is Vice President of NCRL, Plaintiff Stacy Thompson is a member of the Board of Directors of NCRL, and Plaintiff Barbara Holt is President of NCRL. Verified Complaint at ¶¶ 4–7.

Defendant, Federal Election Commission, is the independent federal agency with exclusive jurisdiction over the administration, interpretation and civil enforcement of the Federal Election Campaign Act (the "Act"). 2 U.S.C. 437g(a)(5), 437g(c).

Plaintiffs commenced this action on January 3, 2000, by filing a complaint seeking declaratory and injunctive relief. Plaintiffs challenge the constitutionality of prohibitions on corporate independent expenditures and contributions in connection with political activity contained in the Federal Election Campaign Act and regulations promulgated thereunder.

Plaintiffs argue that: (1) 2 U.S.C. § 441b(a) and 11 C.F.R. 114.10 prohibit NCRL from making independent expenditures in connection with federal elections in violation of their First Amendment freedoms of expression and association; and (2) 2 U.S.C. § 441b and 11 C.F.R. § 114.10 ban contributions by all corporations, including NCRL, and thus infringe NCRL's First Amendment rights. Plaintiffs seek declaratory and injunctive relief in connection with these grievances.

This Court held a hearing on this matter on September 18, 2000. Parties' motions are ripe for ruling.

## DISCUSSION

### I. Motions for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid summary judgment, the opposing party must introduce evidence to create an issue of material fact on "an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## II. Legal Framework

The importance of campaign contributions and expenditures as political speech is beyond question. Such speech is central to the "unfettered interchange of ideas" in the political sphere. *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). As a result, limitations on political contributions and expenditures "operate in an area of the most fundamental First Amendment activities," *Buckley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), implicating the closely-guarded freedoms of expression and association.

The Supreme Court has upheld these freedoms in the context of organizational speech. In *Buckley,* the Court stated that "[g]roup association is protected because it enhances 'effective advocacy.'" *Buckley,* 424 U.S. at 65, 96 S.Ct. 612. Importantly, individuals contribute to organizations "because they regard such a contribution as a more effective means of advocacy than spending the money under their own personal direction". *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 261, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (hereinafter "*MCFL* ").

The First Amendment freedoms of *corporations* are not absolute. Stemming from a "concern over the corrosive influence of concentrated corporate wealth", *id.* at 257, 107 S.Ct. 616, the Federal Election Campaign Act significantly restricts corporate activity in the political realm. The Act is part of a "history of regulation of corporate political activity" that has sought to prevent corporate " 'political war chests' " from hampering the integrity of the marketplace of political ideas. *Id.* at 257, 107 S.Ct. 616. Recognizing such threats, "the Supreme Court has, in some circumstances, upheld complete prohibitions on both corporate political contributions … and independent expenditures." *North Carolina Right to Life v. Bartlett,* 168 F.3d 705, 713 (4th Cir.1999), cert. denied, 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000) (hereinafter "*NCRL I* ").

In *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), the Supreme Court held that the state interest in regulating corporate political activity must be weighed against corporations' valid First Amendment freedoms. The regulation of corporate political speech reflects a concern "not about the corporate form per se, but about the potential for unfair deployment of wealth for political purposes", *MCFL,* at 259, 107 S.Ct. 616. The Supreme Court determined that the 2 U.S.C. § 441b ban on corporate independent expenditures could not constitutionally be applied to MCFL, a non-profit, non-stock corporation with an ideological purpose. *Id.* at 252, 107 S.Ct. 616.

The Court reasoned that certain non-profit, ideological corporations pose no threat to the political marketplace. *See MCFL,* at 263, 107 S.Ct. 616 ("It is not the case, however, that MCFL merely poses less of a threat of the danger that has prompted regulation. Rather, it does not pose such a threat at all.") The Court concluded that "the concerns underlying the regulation of corporate political activity are simply absent with respect to" such ideological, non-profit corporations. *Id.* at

263, 107 S.Ct. 616. They held that "§ 441b's restriction of independent spending ... infringes protected speech without a compelling justification for such infringement." *Id.* at 263, 107 S.Ct. 616.

The Court set forth three characteristics "essential" to MCFL's exemption: (1) it was formed for the express purpose of promoting political ideas and cannot engage in business activities; (2) it had no shareholders or other persons affiliated so as to have a claim on its assets or earnings; and (3) it was not established by a business corporation or a labor union and had a policy not to accept contributions from such entities. *MCFL,* at 264, 107 S.Ct. 616.

In *NCRL I,* the Fourth Circuit determined that the list of characteristics in *MCFL* "was not 'a constitutional test for when a nonprofit must be exempt,' but 'an application, in three parts, of First Amendment jurisprudence to the facts in *MCFL* '", *NCRL,* at 714 (quoting *Day v. Holahan,* 34 F.3d 1356, 1363 (8th Cir. 1994)). With that established, the Circuit Court considered whether the same organization in this case, NCRL, belonged in the category of corporations that "does not pose ... a threat" to the political marketplace. *MCFL,* at 263, 107 S.Ct. 616.

NCRL would have failed to qualify as an *MCFL*-exempt corporation under a strict application from that case, because it accepted an insignificant amount of corporate contributions. The Court held that the "crucial question is not whether NCRL has a policy against accepting corporate contributions, but whether ... it is serving as a conduit for the type of direct spending [by for-profit corporations] that creates a threat to the political marketplace." *NCRL I,* at 714. Finding that corporate contributions made to NCRL were "not of the traditional form" and, moreover, that NCRL "display[ed] all the typical characteristics of the nonprofit form", the Circuit

Court determined that NCRL "falls squarely within the MCFL exception". *Id.,* at 714.

The Circuit Court then held that the North Carolina statutes "fail[ed] 'to distinguish between corporations which pose a threat to the integrity of the political process and those which do not.' " *Id,* at 714. Lacking such an important distinction, the statutes infringed First Amendment freedoms without a compelling state interest and were therefore declared "unconstitutionally overbroad". *Id.,* at 714.

■ NCRL now asks this Court to examine similar issues in the federal context. The federal statute and regulations, on their face, constitute an absolute bar to NCRL making contributions to or independent expenditures on behalf of a candidate for federal office. Such a burden on NCRL's First Amendment rights may be upheld only upon a showing that it is narrowly-tailored to further a compelling governmental interest. *Buckley v. Valeo,* 424 U.S. 1, 44–45, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

### III. 2 U.S.C. § 441b(a) Ban on Corporate Expenditures

■ Plaintiffs first challenge the 2 U.S.C. § 441b(a) ban on corporate expenditures. 2 U.S.C. § 441b(a) makes it "unlawful for any ... corporation to make a[n] ... expenditure in connection with any election to any political office". 2 U.S.C. § 441b(a) fails to distinguish between innocuous corporations, such as NCRL, and corporations that, as "political war chests", pose a real and perceived threat to the political process. Instead, it prohibits "any corporation" from making independent expenditures in connection with elections.

As discussed above, the Supreme Court held this statute unconstitutional as applied to Massachusetts Citizens for Life, a

non-profit, ideological corporation similar to NCRL. MCFL was deemed "more akin to [a] voluntary political association[ ] than [a] business firm[ ]", *MCFL*, at 263, 107 S.Ct. 616. Given that MCFL posed no threat to the political marketplace, the Court found that 2 U.S.C. § 441b(a) prohibited MCFL from making independent expenditures "without a compelling justification for such infringement." *MCFL* at 263, 107 S.Ct. 616.

In *NCRL I*, the Fourth Circuit held that a similar ban on corporate independent expenditures was unconstitutional. The Court determined that NCRL qualifies as an MCFL-type corporation, for which the interest in regulating political activity is not compelling. *NCRL I*, at 714 ("NCRL falls squarely within the MCFL exception."). The FEC states that "the [*NCRL I* ] opinion is clear and controlling as to NCRL's entitlement to a constitutional exemption from 2 U.S.C. 441b's prohibition of corporate expenditures ...". Def.Mem. in Supp. at 20. This Court agrees. Given that NCRL falls "squarely within" the category of non-threatening, MCFL-type organizations, *NCRL I* at 714, NCRL poses no threat to the political forum. This Court therefore holds that the § 441b(a) ban on independent expenditures violates NCRL's First Amendment rights without a compelling interest.

*IV. 11 C.F.R. § 114.10—Limited Exemption from the § 114.2(b) Ban on Corporate Expenditures*

Plaintiffs next challenge 11 C.F.R. § 114.10. 11 C.F.R. § 114.2(b) prohibits "[a]ny corporation whatever ... from making a contribution ... in connection with any Federal election [and] [e]xcept as provided at 11 C.F.R. 114.10 ... from making expenditures with respect to a Federal election". After *MCFL*, it was clear that the ban on corporate expenditures could not be applied indiscriminately to all organizations that took the corporate

form. *See MCFL*, 479 U.S. 238, 263, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). 11 C.F.R. § 114.10 thus reflects an effort by the FEC to comply with the exception for non-profit, non-threatening corporations that was carved out in *MCFL*.

Section 114.10 provides that certain "qualified nonprofit corporations" may be exempt from the prohibition on corporate independent expenditures. It defines a "qualified" nonprofit as one that satisfies the following criteria:

(1) its only express purpose is the promotion of political ideas and it does not engage in business activities;

(2) it has no shareholders, nor any other persons with any ownership interest or claim on assets or earnings or who receives any benefit that makes it a "disincentive for them to disassociate themselves with the corporation on the basis of a corporation's position on a political issue", including credit cards, education, etc.;

(3) it was not established by a business corporation or labor organization nor does it "directly or indirectly accept donations of anything of value from business corporations"; and

(4) it is a non-profit under 26 U.S.C. 501(C)(4).

11 C.F.R. § 114.10(c)(1)–(5).

NCRL sets forth a number of characteristics pertinent to the application of § 114.10 to its case:

(1) NCRL is a non-profit corporation that is exempt from federal income tax under § 501(c)(4) of the Internal Revenue Code;

(2) NCRL was not established by a business corporation or labor union, and has no shareholders or other affiliates who have a claim on its assets or net earnings;

(3) NCRL is a "public service organization" that has as its "purpose ... to gather and disseminate, by all means of communication, accurate up-to-date information on the subjects of abortion, euthanasia ... their effects on the victim family, the community ... and to further work for pro-life alternatives to abortion" as well as to "make donations for the public welfare, or for religious, charitable, scientific or educational purposes";

(4) While primarily funded by private contributions from individuals, NCRL has accepted contributions from business corporations in the past. These contributions were insignificant in relation to the total contributions from individuals, and were derived almost exclusively from a program by which telephone customers directed their phone bill refunds to the non-profit at their election.

Verified Complaint at & & 10–12.

■ NCRL may fall "squarely within" the *MCFL* exemption, *NCRL I*, at 714, but it falls squarely outside the terms of § 114.10. Because of the insignificant contributions it has received from corporations, NCRL fails to meet the requirement that it "not directly or indirectly accept donations ... from business corporations". 11 C.F.R. § 114.10(c)(4).

Furthermore, NCRL has "engaged in traditional fundraising activities of non-profit corporations, such as walk-a-thons and raffles, and engages in minor business activities incidental and related to its advocacy of issues, such as receiving special event revenue ... and revenue from distributing its pro-life literature". Verified complaint at ¶ 25. Such activities qualify as "business activities", further disqualifying NCRL under 11 C.F.R. § 114.10(c)(2).[1]

The FEC's construction of the "qualified non-profit corporation" exemption is a "formal" interpretation of the holding in *MCFL*. Such an approach has been rejected by the Eighth Circuit in *Day v. Holahan*, 34 F.3d 1356 (8th Cir.1994), cert. denied, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995) (stating that "[t]he state goes too far in concluding that the factual findings of MCFL translate into absolutes in legal application") and the Second Circuit in *Federal Election Commission v. Survival Education Fund, Inc., et al.*, 65 F.3d 285 (1995) (holding that "[t]he rigidity with which the FEC would have us apply MCFL would impoverish political debate").

Such a strict interpretation of *MCFL* has been rejected in this Circuit. The Court in *NCRL I* "agreed with those circuits that have addressed the question, each of which has held that the list of nonprofit corporate characteristics in MCFL was not 'a constitutional test for when a nonprofit must be exempt', but 'an application, in three parts, of First Amendment jurisprudence to the facts in MCFL.'" *NCRL I*, at 417.

By excluding NCRL from the category of "qualified nonprofit corporations", § 114.10 results in a continued infringement of NCRL's constitutional rights, as secured by the First Amendment under *NCRL I*. The Commission admits that "the [*NCRL I*] opinion is clear and controlling" and that NCRL is thus has a "right to make independent expenditures in connection with federal elections" Def.Mem. in Supp. at 20, 21. However, the Commission argues that Plaintiffs therefore lack standing to contest § 114.10. This Court disagrees.

---

1. "Business activities" are defined as anything other than "fundraising activities that are expressly described as requests for dona-

tions that may be used for political purposes". 11 C.F.R. § 114.10(b)(3)(B)(ii).

■ In order to demonstrate standing, a party must show that: (1) it has suffered an injury in fact; (2) there is a causal connection between the injury and the challenged regulation; and (3) there is a likelihood that the injury will be redressed by a favorable decision of the court. *Burke v. City of Charleston,* 139 F.3d 401, 405 (4th Cir.1998).

■ The Commission claims that, as an "exempt" corporation under *NCRL,* NCRL has not and will not in the future be subject to an enforcement action by the FEC under § 114.2(b). They therefore argue that NCRL has suffered no injury. It is well-settled that "[w]hen a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute." *Bartlett,* 168 F.3d. at 710. This "credible threat" will be found, and a case or controversy will exist, where a "non-moribund" statute "facially restrict[s] expressive activity by the class to which the plaintiff belongs" and there is an absence of compelling evidence to the contrary. *New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 15 (1st Cir.1996).

In this case, 11 C.F.R. § 114.2(b), on its face, prohibits independent expenditures by non-qualifying corporations. 11 C.F.R. § 114.10(c)(2) and (c)(4) bar NCRL from achieving "qualified" status. Despite the FEC's unenforceable promise to exercise self-restraint in the matter, NCRL's officers remain subject to criminal liability under these statutes. Because it would be unlawful for them to do otherwise, Plaintiffs have withheld their consent to make independent expenditures out of NCRL's general treasury. Verified Complaint at ¶¶ 33, 34. The injury in this case is therefore "one of self-censorship; a harm that can be realized even without an actual prosecution", *Virginia v. American Booksellers Association,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). Because

the Plaintiffs' speech has been chilled as a result of § 114.10, an infringement which may be redressed by a ruling of this Court, the Plaintiffs have clearly established standing in this case.

This Court has found that NCRL has a constitutional right to make independent expenditures in connection with federal elections under *MCFL* and *NCRL I.* Section 114.10, by its terms, prohibits NCRL from doing so. Therefore, 11 C.F.R. § 114.10 violates NCRL's protected First Amendment rights without a compelling interest.

## V. 2 U.S.C. § 441b(a) and 11 C.F.R. 114.2(b) Ban on Corporate Contributions

Plaintiffs next challenge the ban on corporate contributions set forth in 2 U.S.C. § 441b(a) and 11 C.F.R. § 114.2(b). 2 U.S.C. § 441b(a) states that "[i]t is unlawful for any ... corporation ... to make a contribution ... in connection with any election to any political office". 11 C.F.R. § 114.2(b) states that "[a]ny corporation whatever or any labor organization is prohibited from making a contribution ... in connection with any Federal election".

It is well established that direct contributions to political candidates implicate important First Amendment rights, specifically, the textual rights to speech and to petition the government for a redress of grievances, and the non-textual right to associate. "[T]he right of association is a 'basic constitutional freedom,' ... that is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.' " *Buckley,* 424 U.S. at 24–25, 96 S.Ct. 612 (citations omitted). "In view of the fundamental nature of the right to associate, governmental 'action which may have the effect of curtailing the freedom to associate is subject to

the closest scrutiny.'" *Id.* at 25, 96 S.Ct. 612.

▆▆ In the instant case, 2 U.S.C. § 441b(a) and 11 C.F.R. § 114.2(b) clearly burden the associational rights of NCRL and other ideological, non-stock, non-profit corporations by prohibiting them from making direct contributions to candidates. The FEC argues that the impact of this burden is lessened by the availability of a "segregated fund" option. Def.Mem. at 6. Indeed, by virtue of its incorporated status, NCRL *must* form a segregated fund in order to make a limited, direct contribution to a candidate for public office. 2 U.S.C. § 441b(2) allows for such a fund by stating that: "[t]he term contribution ... shall not include ... the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation ...". 2 U.S.C. § 441b(b)(2).

However, in *MCFL,* in the context of independent expenditures, the Supreme Court emphasized the burdensome nature of such funds. Segregated funds are "political committees" under the Act. 2 U.S.C. § 431. They must therefore adhere to significant reporting requirements, staffing requirements and other administrative burdens. *See* 2 U.S.C. § 432. The Supreme Court noted that these "more extensive requirements and more stringent restrictions ... may create a disincentive for such organizations to engage in political speech." *MCFL,* at 254, 107 S.Ct. 616.

The segregated fund requirement clearly burdens the First Amendment rights of NCRL. "It is not unreasonable to ·suppose that ... an incorporated group of like-minded persons might seek donations to support [contributions to] political candi-

dates, by means of garage sales, bake sales, and raffles. Such persons might be turned away by the prospect of complying with all the requirements imposed by the Act." *MCFL,* at 255, 107 S.Ct. 616. Whether the frustrated contributor is North Carolina Right to Life, Inc.,[2] California Citizens for the Blind, Inc., or Kentucky People for the Trees, Inc., denying such an organization the right to perform the "symbolic act of contributing", *Buckley,* at 21, 96 S.Ct. 612, and thus to associate with candidates espousing similar views is an infringement on First Amendment rights that demands a compelling justification. No such justification is present here.

The FEC argues that *Federal Election Commission et al. v. National Right to Work Committee et al.,* 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982) (hereinafter *"NRWC"*) set forth compelling justifications for the regulation of corporate contributions. The government interests identified in *NRWC* were: (1) to prevent the "substantial aggregation of wealth" of corporations from being converted into " 'political war chests' " used to incur political debts; and (2) to protect individuals who have paid money into a corporation or union for purposes other than the support of candidates. Def.Mem. at 10–12, 15. Neither interest is compelling in this case.

First, the fear of a " 'political warchest' " is misplaced with respect to NCRL. As an MCFL-type corporation, NCRL is "more akin to [a] voluntary political association[ ] than [a] business firm[ ]", *MCFL,* at 263, 107 S.Ct. 616, and "do[es] not pose the danger that has prompted regulation" of corporations in the past. *Id.* at 264, 107

---

**2.** Using the reasoning set forth in *MCFL,* the "fact that [NCRL] established a political committee ... does not change this conclusion, for the corporation's speech may well have been inhibited due to its inability to form such

an entity before that date. Furthermore, other organizations comparable to [NCRL] may not find it feasible to establish such a committee and may therefore decide to forego such speech." *MCFL,* at 255 n. 7, 107 S.Ct. 616.

S.Ct. 616. Because NCRL poses no potential threat in light of its non-profit, ideological nature, any governmental interest in regulating the organization may not be deemed compelling simply by virtue of NCRL's " 'use of the corporate form' " *NCRL,* at 713.

Second, there is no danger of a dissenting shareholder or unionworker in the case of NCRL. The Supreme Court "acknowledged the legitimacy of this concern as to the dissenting stockholder and union member in [*NRWC* ] and in *Pipefitters* . . . But such persons, as noted, contribute investment funds or union dues for economic gain, and do not necessarily authorize the use of their money for political ends." *MCFL,* at 260, 107 S.Ct. 616 (citations omitted). By contrast, individuals who contribute to NCRL and other *MCFL*-type organizations are "fully aware of its political purposes, and in fact contribute precisely *because* they support those purposes." *Id.* at 260–61, 107 S.Ct. 616 (emphasis added).

The FEC seeks to distinguish *MCFL* from this case on the basis that "the decision in *MCFL* extended only to 'corporate expenditures.' " Def.Mem. in Supp. at 15. The FEC argues that contributions have been more easily regulated than independent expenditures in the past, so that the ban on corporate contributions may be constitutional as applied to NCRL, even though the corresponding ban on corporate independent expenditures is not. This Court finds the distinction between contributions and expenditures to be immaterial in this case.

A distinction between contributions and expenditures was suggested in *Buckley,* when the Court held that "[a] contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support", at 20–21. The Court noted that "the quantity of communication by the contributor does not increase perceptibly with the size of his contribution", *Buckley,* at 21, 96 S.Ct. 612, so that the First Amendment freedoms associated with such a contribution are exercised when the contribution is made—no matter how great or small its size.

This distinction is important in the context of *limitations,* as was the issue in *Buckley.* A contribution *limitation* "involves little direct restraint on . . . political communication, for it permits the symbolic expression of support evidenced by a contribution." *Buckley,* at 21, 96 S.Ct. 612. The issue in this case is not whether the government has a compelling interest in *limiting* contributions—under *Buckley,* it is clear that they do. Moreover, the state's general concerns in light of the "historical role [of direct contributions] in the corruptive process", *MCFL* at 260, 107 S.Ct. 616, are adequately and more directly addressed by the significant dollar limitations on direct contributions contained elsewhere in the Act. *See, e.g.,* 2 U.S.C. § 441a.

The question here is whether the FEC has demonstrated a compelling interest in *prohibiting* even limited contributions by *all* corporations, even those that "do[ ] not pose such a threat". *MCFL,* at 263, 107 S.Ct. 616. Since NCRL is "more akin to [a] voluntary political association than [a] business firm[ ]", *MCFL,* at 263, 107 S.Ct. 616, "the concerns underlying the regulation of corporate political *activity* are simply absent" with regard to NCRL. *Id.* at 263, 107 S.Ct. 616 (emphasis added). These concerns are absent with respect to political activity as a general matter-both in the context of limited contributions as well as independent expenditures. This Court therefore sees no compelling state interest in banning corporate contributions by NCRL and denying it the opportunity to make "symbolic expression[s] of sup-

port", *Buckley,* at 21, 96 S.Ct. 612. Absent a compelling interest, the ban on corporate expenditures in 2 U.S.C. § 441b(a) and 11 C.F.R. § 114.2(b) violates NCRL's protected First Amendment rights.

## CONCLUSION

The Constitutional right of NCRL to make independent expenditures and limited contributions has been adequately established. For the reasons discussed above: (1) 2 U.S.C. § 441b clearly infringes that right, by prohibiting NCRL from making independent expenditures or contributions on behalf of a candidate; (2) 11 C.F.R. § 114.2(b) violates that right by prohibiting NCRL from making campaign contributions; and (3) 11 C.F.R. § 114.10 violates that right by failing to exempt NCRL from the § 114.2(b) ban on corporate independent expenditures.

Given that these provisions violate NCRL's constitutional rights without a compelling state interest, Plaintiffs are clearly entitled to declaratory and injunctive relief in this case. At a minimum, this Court may declare the provisions unconstitutional as applied to NCRL. Alternatively, if the First Amendment infringements are "substantial" as judged "in relation to the statute's plainly legitimate sweep", *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), this Court may deem them facially unconstitutional.

Whether the infringements in this case warrant such a declaration must be further addressed by the Parties before it is determined by the Court. Plaintiffs are therefore ordered to submit a Memorandum on this issue within 20 days after the date of this Order. Defendant must submit its Response within 20 days after the Plaintiffs' submission. This Court withholds its judgment regarding Plaintiffs' declaratory and injunctive relief in connection with

these grievances until such Memoranda are submitted.

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is hereby GRANTED to the extent that 2 U.S.C. § 441b(a), 11 C.F.R. § 114.2(b) and 11 C.F.R. § 114.10 violate NCRL's protected First Amendment right to make contributions and expenditures in connection with federal elections. However, the extent of relief associated with this Judgment will be set out in the Court's final order. Defendants' Motion for Partial Summary Judgment and Motion for Partial Dismissal are hereby DENIED. The effect of this ruling is hereby STAYED until the final order has been issued by the Court. The Court will award appropriate declaratory and injunctive relief at that time.

SO ORDERED.